LAW OFFICE OF MARK G. SPENCER
MARK G. SPENCER, BAR # 199134
525 B Street, Suite 1500
San Diego, California 92101
Tel. (619) 233-8610
Fax (619) 858-4753
mspencerlaw@hotmail.com

Attorney for Defendant Kubler Corporation doing business as Alternative Recovery Management

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA DIAZ, | Case No.: 12 CV 1742 MMA BGS |
| Plaintiff, | |
| vs. | DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT |
| KUBLER CORPORATION doing business as ALTERNATIVE RECOVERY MANAGEMENT, | |
| | "ORAL ARGUMENT REQUESTED" |
| Defendants. | Date:       10/15/13 |
| | Time:       2:30 PM |
| | Judge:      Hon. M. Anello |

## SUMMARY OF DEFENDANT'S OPPOSITION

Plaintiff Tamara Diaz ("Diaz") claims that Defendant Kubler Corporation doing business as Alternative Recovery Management ("ARM") violated provisions of the Fair Debt Collections Practices Act ("FDCPA") 15 U.S.C. 1692 et seq and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") California Civil Code § 1788 et seq when an ARM employee made two (2) telephone calls to Ms. Diaz in order to collect a lawful debt incurred by Ms. Diaz. Based on the evidence presented, ARM requests that this Court deny Plaintiff's motion for summary judgment and/or partial summary judgment, and, on the Court's own motion, grant summary judgment to ARM because Ms. Diaz cannot prove any of her causes of action.

Opposition to Summary Judgment

# TABLE OF CONTENTS

TOPIC                                                                                      PAGE

Factual Background                                                                          1

Governing Law                                                                              4

Opposition to Summary of Plaintiff's Arguments                                             5

1)  ARM Did Not Violate the FDCPA by Failing to Provide Proper        5
    Identification

2)  ARM Did Not Violate the FDCPA by Failing to Provide the           5
    "mini-Miranda Warning to Ms. Diaz

3)  ARM Did Not Illegally Charge Interest to Ms. Diaz' Account        6

4)  ARM Did Not Threaten Conduct ARM Did Not Intend to               6
    Follow Through, But, If ARM Had Made Those Threats, Those
    Alleged Threats Were All Actions ARM Could Legally Perform
    in Pursuit of a Debt

5)  ARM Did Not Violate the FDCPA When ARM Reported Mr.              7
    and Mrs. Diaz to the Credit Reporting Agencies

6)  ARM Did Not Make Any Misrepresentations in The Collection       8
    of a Consumer Debt

7)  ARM Has Met The Requirements To Assert the Bona Fide            9
    Error Defense if Needed

**CONTINUED RESPONSES TO PLAINTIFF'S ARGUMENTS**

A) ARM Is Subject to the FDCPA                                                             9

B) The Account at Issue is a Consumer Account                                              9

C) FDCPA and the Rosenthal Acts Are Strict Liability Statutes                              9

D) FDCPA Broadly Prohibits Unfair or Unconscionable Collection       9
   Methods

E) The FDCPA Must Be Liberally Construed in Favor of Consumers      10

F) The "Least Sophisticated Consumer" Standard Can be Used to  10
    Analyze Violations of the FDCPA

G) ARM Did Provide Proper Identification to Ms. Diaz  10

H) Mr. Flores Gave Ms. Diaz the "Mini-Miranda" Warning  10

I) ARM Did Not Illegally Charge Interest to Ms. Diaz' Account  11

J) ARM Did Not Threaten Any Conduct ARM Did Not Intend  11

K) ARM Did Not Violate the FDCPA When It Reported Mr. and  13
    Mrs. Diaz to the Credit Reporting Agencies

L) ARM Did Not Make Any Misrepresentations in the Collection  14
    of the Diaz Debt

M) The Rosenthal Act Establishes California Liability for Violations  14
    of the FDCPA

N)    ARM Has Met The Requirements for the Bona Fide Error  14
    Defense

CONCLUSION  15

1

TABLE OF AUTHORITIES

2  <u>Case Law</u>                                                                <u>PAGE</u>

3  <u>Cronin v. Aetna Life Ins. Co.</u> (2nd Cir. 1995) 46 F.3d. 196, 202            4

4  <u>Eastway Constr. Corp. v. City of New York</u> (2nd Cir. 1985)                 4

5        762 F.2d. 243, 249

6  <u>Empire Elecs. Co. v. United States</u> (2nd Cir. 1962) 311 F.2d. 175, 180     4

7  <u>Clark v. Capital Credit & Collection Services, Inc.</u> (9th Cir. 2006)       10

8  460 F.3d. 1162, 1175 - 1176

9

10 <u>Federal Statutes</u>

11 Federal Rules of Civil Procedure Rule 56(a)                                    4

12 15 U.S.C. 1692(e)                                                              4, 9

13 15 USC 1692e(11).                                                              11

14 15 U.S.C. 1692d                                                                13

15

16 <u>California Statutes</u>

17 California Civil Code § 3289                                                    6

18

19

20

21

22

23

24

25

26

27

28  Opposition to Summary Judgment

# FACTUAL BACKGROUND

On or about March of 2011 Ms. Diaz was in need of dental services and Dr. Maxwell agreed to provide those services.[1]

In March of 2011 (before the procedures were performed), Ms. Noella Maracich, office manager for Parkway Dental, met with Ms. Diaz to explain the cost of the procedure to Ms. Diaz.[2] Ms. Maracich explained how much Ms. Diaz' insurance would pay and the amount that Ms. Diaz would be responsible.[3]  Ms. Diaz informed Ms. Maracich that Ms. Diaz' husband, Mr. Manual Diaz, had secondary dental insurance coverage.[4]

In March and April of 2011, Dr. Maxwell performed the procedures on Ms. Diaz as agreed.  Parkway Dental submitted the bills to Ms. Diaz' primary dental insurance carrier who paid the amounts as expected.[5] However, it was discovered that Mr. Manual Diaz had a dental insurance plan that Parkway Dental did not accept.[6]

In April and May of 2011, Ms. Maracich contacted Ms. Diaz and told Ms. Diaz that Ms. Diaz owed Parkway Dental $3144.00.[7] Ms. Maracich called Ms. Diaz several times to discuss the debt.  In May of 2011, Ms. Diaz agreed that she would start paying $200.00 per month towards her debt.  Ms. Diaz then reneged on her agreement.[8]

Ms. Maracich contacted Ms. Diaz again in September of 2011.  Ms. Diaz agreed to meet with Ms. Maracich to discuss the outstanding bill.  Ms. Diaz failed to keep the meeting to try to settle her debt.[9]

---

[1] DNM, paragraph # 3
[2] DNM, paragraph # 3
[3] DNM, paragraph # 3
[4] DNM, paragraph # 4
[5] DNM, paragraph # 5
[6] DNM, paragraph # 5
[7] DNM, paragraph # 6
[8] DNM, paragraph # 6
[9] DNM, paragraph # 7

1   At Parkway Dental, payment for services are due at the time the procedures are

2  performed.[10]  Ms. Diaz' account was overdue in April of 2011.

3   During the year after Ms. Diaz received the dental procedures from Parkway

4  Dental, Ms. Maracich called and mailed letters to Ms. Diaz in an attempt to resolve this

5  issue. On or about May 2, 2012, Parkway Dental assigned Ms. Diaz' account to ARM.[11]

6   On or about May 2, 2012, the information regarding Ms. Diaz' debt to Parkway

7  Dental was transmitted to ARM.  That data was entered into ARM's Columbia Ultimate

8  Business System ("CUBS") computer software.  The CUBS software accepts the basic

9  information and calculates the interest owed on the debt from the data provided by the

10  creditor.  The CUBS system automatically sends a collection notice to a debtor.  The

11  CUBS system caused the initial collection letter to be sent to Ms. Diaz on May 3, 2012.[12]

12   The date the payments were due to Parkway Dental were March and April of 2011

13  when the services were performed.[13]  The last payment received by Parkway Dental was

14  on May 23, 2011 from Ms. Diaz dental insurance company.[14]   The date of first

15  delinquency was entered as June 23, 2011 as noted in the CUBS system.[15]

16   On May 3, 2012, the Diaz collection case was assigned to Mr. Joshua Flores, a

17  collection agent employed by ARM.  Mr. Flores called Ms. Diazr.  After Mr. Flores

18  confirmed he was speaking with Ms. Diaz, Mr. Flores identified himself, stated his

19  position, identified his employer (ie, ARM), told Ms. Diaz who the creditor was and that

20  amount owed.  Mr. Flores then asked Ms. Diaz if she wanted to take care of the debt.[16]

21   Ms. Diaz told Mr. Flores that the officer manager at Parkway Dental was

22  skimming money off the charges on the file.  Ms. Diaz admitted that she owed about

23

---

[10]  DNM, paragraph # 9

[11]  DNM, paragraph # 12

[12]  Declaration of Steve Nesbitt ("DSN"), paragraphs #'s 5 and 6, Flores Collector's Notes included with Flores' Declaration

[13]  DNM, paragraph # 9

[14]  Flores Collector's Notes included with Flores' Declaration, page 1 of the notes

[15]  DNM, paragraph # 10, Flores Collector's Notes, page 1, Steve Nesbitt Depo, page 60, line 4 to page 62, line 3

[16]  Declaration of Joshua Flores ("DJF"), paragraph # 16

Opposition to Summary Judgment                    2

$2200 to Parkway Dental. Ms. Diaz claimed that her daughter was an attorney and asked Mr. Flores for a verification of the debt. Mr. Flores agreed to provide the verification.[17]

On May 7, 2012, Mr. Flores called Ms. Diaz again. After Mr. Flores confirmed he was speaking with Ms. Diaz, Mr. Flores identified himself, stated his position, identified his employer (ie, ARM), told Ms. Diaz who the creditor was and that amount owed. Mr. Flores then asked Ms. Diaz if she wanted to take care of the debt. At this point, Ms. Diaz began cursing at Mr. Flores and hung up on him.[18]

Later on May 7, 2012, Mr. Flores received a telephone call from Ms. Erika Diaz who claimed she represented Ms. Diaz. After receiving a letter of representation from Ms. Erika Diaz, Mr. Flores attempted to negotiate a settlement of the debt with Ms. Erika Diaz. After Mr. Flores provided Ms. Erika Diaz with the verification of debt that Ms. Erika Diaz requested, Ms. Erika Diaz stopped accepting telephone calls from Mr. Flores.[19] On or about June 4, 2012, Ms. Erika Diaz sent Mr. Flores a letter demanding that Mr. Flores stop calling her. At that time, ARM put Ms. Diaz' collection account in a "suspended" status.[20]

On or about July 30, 2012, Ms. Diaz served ARM with a lawsuit claiming violations of the FDCPA and California Rosenthal Act.

Sometime in the summer of 2012, Ms. Diaz filed a grievance with Delta Dental (Ms. Diaz' dental insurance company) because Ms. Diaz believed that Dr. Maxwell and Parkway Dental had overcharged her by $1000 for the procedures Dr. Maxwell performed in March and April of 2011. In a letter to Ms. Diaz dated September 10, 2012, Delta Dental confirmed that Parkway Dental had billed Ms. Diaz the correct amount.[21]

Dr. Maxwell filed a small claims lawsuit against Ms. Diaz and her husband, Mr.

---

[17] DJF, paragraph # 17
[18] DJF, paragraph # 18
[19] DJF, paragraph # 19
[20] Declaration of Jeff Nesbitt ("DJN"), paragraph # 22
[21] DNM, paragraph # 13, see letter attached to DNM

Opposition to Summary Judgment                    3

1   Manuel Diaz, for the unpaid debt. On or about October 19, 2012. Ms. Diaz agreed to a

2   settlement with Dr. Maxwell to pay $3144 to Dr. Maxwell.  Ms. Diaz then reneged on

3   the signed settlement agreement and refused to pay her debt.[22]

4     In the summer of 2013, in yet another attempt to avoid paying her bill to Dr.

5   Maxwell and Parkway Dental, Ms. Diaz has also filed another grievance with Delta

6   Dental claiming that the procedures performed by Dr. Maxwell and Parkway Dental were

7   not done correctly.  Delta Dental has confirmed that the procedures were done properly.[23]

8   **GOVERNING LAW**

9     In a motion for summary judgment, "[t]he court shall grant summary judgment if

10  the movant shows that there is no genuine dispute as to any material fact and the movant

11  is entitled to judgment as a matter of law." Federal Rules of Civil Procedure Rule 56(a).

12    The party seeking summary judgment in a case has the burden of showing that no

13  genuine factual dispute exists.  <u>Cronin v. Aetna Life Ins. Co.</u> (2nd Cir. 1995) 46 F.3d.

14  196, 202.

15    In reviewing a summary judgment motion, the court must resolve all ambiguities

16  and draw all reasonable inferences in favor of the party opposing the motion.  <u>Eastway</u>

17  <u>Constr. Corp. v. City of New York</u> (2nd Cir. 1985) 762 F.2d. 243, 249.

18    All doubts as to the existence of a genuine issues as to any material fact must be

19  resolved against the moving party.  <u>Empire Elecs. Co. v. United States</u> (2nd Cir. 1962)

20  311 F.2d. 175, 180.

21    "It is the purpose of this title to eliminate abusive debt collection practices by debt

22  collectors, to insure that those debt collectors who refrain from using abusive debt

23  collection practices are not competitively disadvantaged, and to promote consistent State

24  action to protect consumers against debt collection abuses."  15 U.S.C. 1692(e).

25

26    [22] DNM, paragraph # 14, see agreement attached to DNM

27    [23] DNM, paragraph # 15, see letter attached to DNM

28  Opposition to Summary Judgment    4

## OPPOSITION TO SUMMARY OF PLAINTIFF'S ARGUMENTS

1) <u>ARM Did Not Violate the FDCPA by Failing to Provide Proper Identification</u>

A) Mr. Flores does remember some of the conversations with Ms. Diaz.

B) Mr. Flores identifies himself, his position, and his employer to every debtor he calls, including Ms. Diaz.

C) Mr. Jeff Nesbitt, Mr. Flores supervising manager, was present on the days that Mr. Flores called Ms. Diaz and heard Mr. Flores provide proper identification under the FDCPA to every debtor that Mr. Flores contacted those days. (Note: Mr. Jeff Nesbitt has been sitting beside Mr. Flores for approximately three (3) years and has listened as Mr. Flores has given the proper notifications required by the FDCPA and the Rosenthal Act during every telephone call Mr. Flores has made.)

D) Ms. Diaz does NOT recall the telephone conversations with Mr. Flores. Ms. Diaz admitted that she did not know the approximate dates of the calls or the contents of those telephone calls. See Ms. Diaz Depo, page 35, line 9 to page 38, lines 24.

E) Mr. Flores does not always note the routine portions of his conversations with debtors in his notes. The routine portions that are sometimes omitted from his notes include providing proper identification that Mr. Flores gives to every debtor.

F) Mr. Flores sometimes makes the "MINI" notation when he calls a debtor, sometimes he does not. The notes Mr. Flores makes are to track the collection process and to note anything unusual during a conversation, not record every work spoken.

G) Mr. Flores' notes from the calls also do not document that he threatened to sue Ms. Diaz, garnish her wages, or report her to a credit reporting agency.

2) <u>ARM Did Not Violate the FDCPA by Failing to Provide the "mini-Miranda" Warning to Ms. Diaz</u>

A) Mr. Flores does remember some of the conversations with Ms. Diaz.

B) Mr. Flores declares that he provides the "mini-Miranda' to every debtor he calls, including Ms. Diaz.

C) Mr. Jeff Nesbitt, Mr. Flores supervising manager, was present on the days that Mr. Flores called Ms. Diaz and heard Mr. Flores provide the "mini-Miranda" to every debtor that Mr. Flores contacted those days.

3) <u>ARM Did Not Illegally Charge Interest to Ms. Diaz' Account</u>

A) According to California Civil Code § 3289, if a contact that does not stipulate to a legal rate of interest, the obligation shall bear interest of 10 % per annum after a breach. Therefore, ARM has a statutory basis for charging interest to Ms. Diaz' account.

B) ARM did add interest to the debt owed by Ms. Diaz to Parkway Dental. This calculation is made automatically by the CUBS program.

C) ARM used the date for calculating interest AFTER Ms. Diaz defaulted on her payments to Parkway Dental. The payment was due at the time the services were rendered (March and April of 2011). Ms. Diaz was in breach of the agreement when she did not pay for her services at that time. The start date for assessing interest was June 23, 2011. This is approximately 2 months after the services were provided to Ms. Diaz.

4) <u>ARM Did Not Threaten Conduct ARM Did Not Intend to Follow Through, But, If ARM Had Made Those Threats, Those Alleged Threats Were All Actions ARM Could Legally Perform in Pursuit of a Debt</u>

A) Mr. Flores never threatened Ms. Diaz that ARM would sue Ms. Diaz, garnish Ms. Diaz' wages or report the debt to her's and/or her husband's credit report.

B) Every collection case that ARM accepts is a potential lawsuit. However, ARM does not evaluate a case for pursuing in civil court until after their usual collection procedures have run their course. Ms. Diaz retained an attorney and filed this lawsuit before ARM's usual collection process was complete. Therefore, ARM never had the opportunity whether to consider filing a lawsuit against Mr. and Ms. Diaz in this matter.

C) Since ARM did not have a judgment against Ms. Diaz, they were unable to garnish her wages. However, as stated above, every collection case that ARM accepts has the potential for becoming a lawsuit against a debtor. Since, 1) every collection case

1   is a potential lawsuit and 2) neither ARM nor Mr. Flores ever threatened to garnish

2   anyone's wages, this point is moot.

3       D)  Mr. Flores did not threaten to report Mr. and/or Ms. Diaz to the credit

4   reporting agencies.  However, since ARM retained this debt in a suspended status while

5   Dr. Maxwell obtained a judgment against Ms. Diaz, ARM was prepared to resume

6   collection efforts and any credit reporting was part of that collection process.

7       E)  None of the actions of which Ms. Diaz complains (suing a debtor, reporting

8   a debtor to the credit reporting agencies, and garnishing wages) are forbidden by either

9   the FDCPA or the Rosenthal Act.  Assuming for the sake of argument that anyone from

10  ARM said these things to Ms. Diaz, none of these actions are illegal.  ARM has in the

11  past, is in the present, and will in the future sue debtors, report creditors to credit

12  reporting agencies, and garnish debtors' wages.  This would have included Ms. Diaz and

13  her husband until ARM halted its collection procedures in response to this lawsuit.

14  5)      ARM Did Not Violate the FDCPA When ARM Reported Mr. and Mrs. Diaz to the

15  Credit Reporting Agencies

16      A)  Ms. Diaz did not allege in her either her original or her First Amended

17  Complaint that ARM violated the FDCPA when ARM reported her and her husband to

18  the credit reporting agencies.  Therefore, assuming this was a violation of the FDCPA,

19  it would be irrelevant because the allegation is not contained in Ms. Diaz' pleadings.

20      B)  ARM stopped its active collection techniques against Ms. Diaz personally on

21  May 7, 2012 when ARM was notified that Ms. Diaz had retained an attorney.  ARM

22  continued to negotiate a settlement to the dispute with Ms. Diaz' attorney, Ms. Erika

23  Diaz until Ms. Erika Diaz directed ARM to stop contacting her on June 4, 2013.  After

24  ARM stopped its efforts to contact Ms. Erika Diaz about Ms. Diaz' debt, ARM had the

25  Diaz collection matter in a suspended status and was consulting with Dr. Maxwell

26  regarding the collection of the Diaz account.  At no time has ARM closed the file on the

27  Diaz collection matter nor returned that account to the original creditor.

28  Opposition to Summary Judgment                    7

C)  ARM did not return the Diaz debt to Parkway Dental.  According to the agreement that ARM had with Parkway Dental Group, ARM is assigned each debt for a minimum of six (6) months.  Since Parkway Dental did not assign the Diaz debt to ARM until May 2012, ARM had the right to retain that debt until November 2012.

D)  ARM is the fictitious business name of a corporation.  Corporations are legal entities who have no feelings about anything.  As for the individuals at ARM, they are debt collectors who encounter thousands of angry debtors per year.  Ms. Diaz is just one of a crowd of thousands of debtors who are dishonest and refuse to pay lawful debts for services they requested and received.

6)     ARM Did Not Make Any Misrepresentations in The Collection of a Consumer Debt

A)  The principle amount of debt ARM was attempting to collect from Ms. Diaz was $3144.00.  This was the amount given by Parkway Dental to Ms. Diaz before the services were performed.  This was the amount given to ARM by the creditor Parkway Dental.  This was the amount that Delta Dental (Ms. Diaz' dental insurance carrier) confirmed was correct.  There was no misrepresentation in the principle amount.

B)  California Civil Code § 3289 provides for the addition of interest at 10 % per annum upon the breach of an obligation.  Ms. Diaz breached her agreement to pay for the dental services Parkway Dental performed.  The payment for these procedures were due at the time the procedures were performed (March and April of 2011).  ARM entered the data into its CUBS collection software which calculated the amount of interest that Ms. Diaz owed to Parkway Dental.  The start date for the collection of interest was June 23, 2011.  There was no misrepresentation of ARM's right to charge interest.

C)  Neither ARM nor Mr. Flores told Ms. Diaz that ARM would garnish Ms. Diaz' wages, sue her, or report the debt on Ms. Diaz and/or her husband's credit report.  However, even if Mr. Flores had made these statements, none of these actions are made illegal by the FDCPA or the Rosenthal Act.  ARM routinely reports debtors to the credit

Opposition to Summary Judgment                          8

reporting agencies, sues debtors, and will garnish a debtor's wages in the appropriate situation.

7)   **ARM Has Met The Requirements To Assert the Bona Fide Error Defense if Needed**

A)  Neither Ms. Diaz' complaint(s) nor her request for summary judgment are examples of clarity.  However, if Ms. Diaz is claiming that the principle amount that ARM was trying to collect was incorrect, ARM could assert this defense because ARM relied on Parkway Dental to provide to principle amount of the debt to ARM.

B)  If Ms. Diaz is claiming that the interest ARM added to her account is incorrect, ARM could assert this defense because ARM relied on the data provided by Parkway Dental to calculate the interest charged to Ms. Diaz' account.

Depending on what alleged "violation" Ms. Diaz is claiming in this argument, ARM may or may not have a Bona Fide Error defense.  However, since Ms. Diaz did not specify which alleged "violation" she is referring, ARM cannot respond to this argument.

## CONTINUED RESPONSES TO PLAINTIFF'S ARGUMENTS

A) ARM Is Subject to the FDCPA

Admitted.

B) The Account at Issue is a Consumer Account

ARM has no evidence to the contrary.

C) FDCPA and the Rosenthal Acts Are Strict Liability Statutes

ARM agrees that a violation of a single provision of the FDCPA is sufficient to establish liability under the statutes.

D) FDCPA Broadly Prohibits Unfair or Unconscionable Collection Methods

ARM agrees with this description of the FDCPA.  ARM notes that the FDCPA also states that one of the purposes of the FDCPA is "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged".  15 USC 1692(e).

E) The FDCPA Must Be Liberally Construed in Favor of Consumers

ARM states that in Clark v. Capital Credit & Collection Services, Inc. (9th Cir. 2006) 460 F.3d. 1162, 1175 - 1176, the language actually says "[the FDCPA] *should* be" not the "[the FDCPA] *must* be" [emphasis added].  Since this argument is really not applicable to this case since the issue is Ms. Diaz' credibility, Ms. Diaz' "mistake" citing the law can probably be overlooked.

F) The "Least Sophisticated Consumer" Standard Can be Used to Analyze Violations of the FDCPA

This argument is really not applicable to this case since the issues are Ms. Diaz' credibility and whether anyone believes her claims that Mr. Flores threatened to sue her, garnish her wages and/or report her and her husband to the credit reporting agencies.

G) ARM Did Provide Proper Identification to Ms. Diaz

Mr. Flores is trained to, after verifying the identity of a debtor, to identify himself, his position, his employer (ie, ARM), give a "mini-Miranda" notice, give the amount of the debt, and the original creditor to each debtor.  Mr. Flores declares that, when he called Ms. Diaz on May 3 and May 7 of 2012, identified himself, his position, his employer (ie, ARM), gave a "mini-Miranda" notice, give the amount of the debt, and the original creditor.

Mr. Jeff Nesbitt, who is Mr. Flores' supervising manager, was sitting within three (3) feet of where Mr. Flores was calling debtors on May 3 and May 7, 2012.  Mr. Jeff Nesbitt declares that he heard Mr. Flores identify himself, his position, his employer (ie, ARM), a "mini-Miranda" notice, give the amount of the debt, and the original creditor to every debtor that Mr. Flores called on those days.

Mr. Flores gave Ms. Diaz proper identification as required by the FDCPA.

H) Mr. Flores Gave Ms. Diaz the "Mini-Miranda" Warning

Mr. Flores is trained to provide the "mini-Miranda" warning to each debtor with whom he speaks.  Mr. Flores has stated that he gave that warning to every debtor he has

1  called since he has been employed with ARM, including Ms. Diaz.

2       Mr. Jeff Nesbitt, who is Mr. Flores' supervising manager, was sitting within three
3  (3) feet of where Mr. Flores was calling debtors on May 3 and May 7, 2012. Mr. Jeff
4  Nesbitt declares that he heard Mr. Flores give the "mini-Miranda" warning to each
5  debtor that Mr. Flores called on those days.

6       I) <u>ARM Did Not Illegally Charge Interest to Ms. Diaz' Account</u>

7       California Civil Code § 3289 provides that interest at a rate of 10 % per annum
8  may be added to any obligation that has been breached.

9       Ms. Diaz was obligated to pay for her dental procedures at the time the services
10  were performed. Ms. Diaz failed to pay for those services at the time they were provided
11  (or at any other time).

12       Parkway Dental informed ARM the date of the breach was June 23, 2011. This
13  was the date used for calculating the amount of interest Ms. Diaz owed to Parkway
14  Dental. This is almost two months after the breach of Ms. Diaz' obligation.

15       Again, Ms. Diaz attempts to omit the pertinent portion of the FDCPA which do
16  not support their argument. However, the pertinent portion of the statute states (in
17  whole) "[t]he collection of any amount (including any interest, fee, charge, or expense
18  incidental to the principal obligation) unless such amount is expressly authorized by the
19  agreement creating the debt **OR PERMITTED BY LAW**." (emphasis added). 15 USC
20  1692e(11).

21       Parkway Dental is entitled to add interest to the amount owed on Ms. Diaz'
22  obligation and ARM is entitled to demand that amount during collection.

23       J) <u>ARM Did Not Threaten Any Conduct ARM Did Not Intend</u>

24       First, neither ARM nor Mr. Flores told Ms. Diaz that ARM would garnish Ms.
25  Diaz' wages, sue her, or report the debt on Ms. Diaz and/or her husband's credit report.
26  These threats only existed in the mind of Ms. Diaz and never occurred.

27  ///

28  Opposition to Summary Judgment                    11

1   However, even if an ARM collector did threaten a debtor to garnish wages, sue,
2   or report a debt to a credit reporting agency, these are all actions that ARM does
3   routinely take.   There is nothing in the FDCPA that would prevent a creditor or a
4   collection agency from garnishing a debtor's wages, filing a lawsuit to recover a debt,
5   or reporting a debtor to a credit reporting agency.

6   The problem with Ms. Diaz' claim regarding ARM's "intentions" is a basic lack
7   of understanding of the debt collection process.

8   Every debt that comes into ARM has the potential for a lawsuit against the debtor,
9   a wage garnishment against the debtor, and/or a negative report to the credit reporting
10  agencies against the debtor.   However, ARM does not rush out to file a lawsuit, garnish
11  wages while making a report to the credit reporting agencies, and then contact the debtor
12  to ask if the debtor wants to settle the debt.   ARM (like every other collection agency in
13  the world) calls and/or sends a letter to the debtor to ask if they want to settle the debt.
14  If that does not produce results, ARM will eventually make another call and/or send out
15  another letter.   ARM will repeat this process until the matter is resolved.

16  If the matter is not resolved within six months or so, the collector will return the
17  file to a supervising manager.   The supervising managers meet on a regular basis to
18  determine how to proceed with the unresolved cases.   Depending on the amount at issue
19  and assets available, ARM may decide to file a civil lawsuit.   If ARM is already in
20  possession of a judgment, ARM may begin the wage garnishment process.   Many of the
21  debts are reported to the credit reporting agencies and placed in a suspended status.
22  Often, the debtors will contact ARM about clearing the negative reporting.

23  In Ms. Diaz' case, ARM received the account on May 2, 2011.   By May 7, 2011,
24  Ms. Erika Diaz, allegedly an attorney, contacted ARM with a letter of representation
25  informing ARM to cease contact with Ms. Diaz.   ARM continued to attempt to resolve
26  the debt with Ms. Erika Diaz until June 4, 2011 when Ms. Erika Diaz sent ARM a letter
27  directing ARM to stop contacting her.   This lawsuit was filed in July 2011.

28

In sum, each and every debt collection account that ARM receives is a potential lawsuit against the debtor, a potential wage garnishment against the debtor, and/or a potential negative reporting to the credit reporting agencies.  In this case, ARM did not have the opportunity to review which course of action to take because Ms. Diaz retained an attorney and filed a lawsuit against ARM before the usual review process occurred.

ARM did not threaten Ms. Diaz with any lawsuit, wage garnishment, or negative credit reporting.  However, if a ARM collector had threatened Ms. Diaz with any of those options, they are all legally authorized procedures that ARM would intend to take in any collection account depending on the situation of that account.

K) <u>ARM Did Not Violate the FDCPA When It Reported Mr. And Mrs. Diaz to the Credit Reporting Agencies</u>

Ms. Diaz did not allege either in her complaint or her amended complaint that ARM violated the FDCPA or the Roenthal Act by reporting the Diaz' to the credit reporting agencies for failing to pay their lawful debt.  Therefore, this argument is moot.

Even if Ms. Diaz had made this allegation in her pleadings, it fails on two issues.  First, there is no evidence that ARM reported the Diaz' to the credit reporting agencies in retaliation for filing her lawsuit against ARM.  The only evidence that ARM reported the Diaz' to the credit reporting agencies in retaliation for anything comes from Ms. Diaz' attorneys.

Second, ARM reported the Diaz' to the credit reporting agencies as part of usual collection process.  The Diaz' debt was in an suspended mode as of September 2011 so ARM reported that debt in the usual course of business.  The Diaz' have never denied that they owed the debt.

Besides the above, Ms. Diaz claims in her Separate Statement of Undisputed Facts # 22 that ARM had stopped collecting against Ms. Diaz and returned the debt to the original creditor on June 4, 2011. 15 U.S.C. 1692d only prohibits "conduct which is to harass, oppress, or abuse any person in connection with the COLLECTION OF A

DEBT". If, as Ms. Diaz claims, ARM was not attempting to collect the debt in September of 2011 when the credit reporting was done, then if Ms. Diaz had a cause of action for this reporting, that cause of action was not included in the FDCPA.

L) ARM Did Not Make Any Misrepresentations in the Collection of the Diaz Debt

Mr. Flores, the debt collector who called Ms. Diaz, did not tell Ms. Diaz that ARM would report the debt to a debt collection agency, garnish Ms. Diaz' wages, or sue Ms. Diaz. These allegations are false. Mr. Flores identified himself, his position, and his employer (ie, ARM) so it is not reasonable for Ms. Diaz to believe that Mr. Flores was employed by Parkway Dental. (Note: Ms. Diaz may have believed this, but no rational person would have.)

There is no need to perform a "least sophisticated debtor" analysis in this situation. Mr. Flores properly identified himself to Ms. Diaz during the two telephone calls that he made and did not threaten to sue Ms. Diaz, garnish her wages or report the Diaz' to the credit reporting agencies. The only issue in this case is whether Ms. Diaz has any credibility.

M. The Rosenthal Act Establishes California Liability for Violations of the FDCPA

While the Rosenthal Act establishes liability under California law for violations of the FDCPA, neither set of laws creates violations where none were committed.

N. ARM Has Met The Requirements for the Bona Fide Error Defense

From the time Ms. Diaz filed her lawsuit to the present, neither Ms. Diaz nor her attorneys have ever really articulated what "violation" of the FDCPA or the Rosenthal Act that they allege that ARM committed. Their attitude has always been "we will find evidence of something if we look hard enough".

If Ms. Diaz is claiming that the principle amount that ARM was attempting to collect was incorrect (even though that amount has already been verified by Ms. Diaz'

own dental insurance provider), then the bona fide error defense would apply.

If Ms. Diaz is claiming that the amount of interest that ARM was attempting to collect was incorrect, ARM relied on the dates provided by Parkway Dental and the calculations of the CUBS program to calculate the interest so the bona fide error defense would apply.

Even if this entire mess is a "he said/she said" situation, ARM could still raise the bona fide error defense. ARM does have systems in place to ensure its collectors do not engage in the behavior alleged in Ms. Diaz' complaint. ARM only hires experienced collectors, provides training on collection laws, and provides personal supervision of each collector. Those are procedures reasonably adapted to avoid the "errors" in Ms. Diaz complaint.

## CONCLUSION

Neither ARM nor its collectors violated any provisions of the FDCPA or the Rosenthal Act in this case. Mr. Flores did not make the threats to sue, garnish, and/or report that Ms. Diaz attribute to him. Parkway Dental and its assignee, ARM have the right under California law to add interest to a breached obligation. Mr. Flores provided proper identification and notification to Ms. Diaz when he called her. Even if Mr. Flores had made those threats to Ms. Diaz, those were all actions that ARM could legally take and would take in the appropriate circumstances. There are triable issues of fact in each and every claim that Ms. Diaz brings.

The Court should deny Ms. Diaz' motion for summary judgment in its entirety.


__September 27, 2013_____          /s/ Mark G. Spencer_____

Date                              Mark G. Spencer

                                  Attorney for Defendant
                                  Kubler Corporation doing business as
                                  Alternative Recovery Management


Opposition to Summary Judgment                    15